UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:19-cv-00038-JSM-SPF

EILEEN AGURCIA, et al.,

    Plaintiffs,

vs.

REPÚBLICA DE HONDURAS,
INSTITUTO DE LA PROPIEDAD,
and EMPRESSA NACIONAL DE
ENERGÍA ELÉCTRICA,

    Defendants.
_____/

**PLAINTIFFS' MOTION TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Eileen Agurcia, *et al.,* move for limited jurisdictional discovery as authorized by federal law in litigation under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* and in support state:

**STATEMENT OF RELEVANT FACTS**

This is an action by nearly one hundred United States citizens against the Republica de Honduras ("Honduras" or "the Republic") and its alter egos, Instituto de la Propiedad ("the Property Institute") and Empresa Nacional de Energía Eléctrica ("the Electric Company") pursuant to the expropriation or takings clause of the FSIA, 28 U.S.C. §1605(a)(3). *See generally* [DE-1].

Defendants raise multiple grounds for dismissal [DE-19], several of which are ripe for the limited jurisdictional discovery contemplated by the FSIA, as further demonstrated below. In support of their various arguments, Defendants submit the Declarations of Juan Jose Cruz, an employee of the Electric Company, [DE-21], and José Noé Cortés Moncada, an employee of the

Property Institute, [DE-22], respectively.  Plaintiffs seek to conduct limited written discovery and to depose these individuals to test the veracity of their claims which, in the context of Defendants' arguments urging dismissal, are sweeping.  In addition, Plaintiffs also seek to take discovery from Luis F. Mata, whom as a representative of the Republic, has admitted to the expropriation alleged in this lawsuit.  [DE-1 at ¶¶150-153].

Defendants cite to Messrs. Cruz and Cortés' Declarations for the proposition that both the Electric Company and the Property Institute are immune from suit under the FSIA.  [DE-19 at 12 (citing Cortés Decl. ¶¶2-8; Cruz Decl. ¶3)].  Defendants argue that Plaintiffs have failed to invoke the expropriation or takings exception to the FSIA.  [DE-19 at 13 (citing 28 U.S.C. § 1605(a)(3)].  More specifically, Defendants contend that Plaintiffs have failed to meet the four elements of a taking, as set forth in *Comparelli v. Rep. Bolivariana de Venezuela*, 891 F.3d 1311, 1319 (11th Cir. 2018) (citations omitted)).  [DE-19 at 13].

A taking, according to *Comparelli* occurs when (1) rights in property are at issue; (2) the property was taken; (3) the taking violated international law; and (4) at least one of the two statutory nexus requirements is satisfied.  *Id*.  Defendants cite to Messrs. Cruz and Cortés' Declarations to argue that Plaintiffs have not properly pled each of these elements.  [DE-19 at 14 (citing Cortés Decl. ¶12) (rights in property at not at issue)]; *see also* [DE-19 at 15 (citing Cortés Decl. ¶¶11-20; Cruz Decl. ¶7); [DE-19 at 16 (Cortés Decl. ¶18; Cruz Decl. ¶8) (arguing that there was no taking)]]; [DE-19 at 19 (citing Cortés Decl. ¶¶22-23 (claiming that there was no violation of international law))]; [DE-19 at 22 (citing Cortés Decl. ¶¶11, 18-20; Cruz Decl. ¶¶7-8); *id*. (citing Cortés Decl. ¶¶9-10; Cruz Decl. ¶6) (asserting that the statutory nexus has not been satisfied))].

In addition to the jurisdictional arguments, Defendants rely on Messrs. Cruz and Cortés' Declarations to support various other arguments.  Defendants also cite to Mr. Cortés Declaration

for the proposition that Plaintiffs lack standing to bring this action.  *See* [DE-19 at 23 (citing Cortés Decl. ¶12)].  The testimony of Messrs. Cruz and Cortés' is also offered to support the claim that the Court lacks personal jurisdiction over the Electric Company and the Property Institute.  *See* [DE-19 at 24 (citing Cortés Decl. ¶¶2-9; Cruz Decl. ¶¶2-6); *id*. at 25 (citing Cortés Decl. ¶¶2-8; Cruz Decl. ¶¶2-4, 7-8); *id*. at 26 (citing Cortés Decl. ¶¶9-10))].  Finally, Defendants cite to the Declarations in support of their claim that this action should be dismissed on *forum non conveniens* grounds.  [DE-19 at 27 (citing Cortés Decl. ¶¶22-23); *see also id.* (citing Cortés Decl. ¶¶24-26; Cruz Decl. ¶9); *id.* at 28 (citing Cortés Decl. ¶21)].

These specific allegations of fact – offered as dispositive evidence that Defendants are immune – contained in Messrs. Cruz and Cortés' Declarations should be subjected to discovery.  The summary of their testimony below confirms the point.

***The Declarations***

   ***Declaration of Juan Jose Cruz***

Mr. Cruz purports to be a "licensed engineer in Honduras" and the "head of the Engineering Department" for the Electric Company.  [DE-21 at ¶1].  Mr. Cruz does not provide any further information regarding his role at the Electric Company, including whether his position, as what appears to be a department head, provides him direct knowledge of the company's overall operations.  According to Mr. Cruz, the Electric Company "is responsible for the production, transmission, distribution and sale of electrical energy only within Honduras."  *Id*. at ¶2.  Mr. Cruz does not provide any foundation for his testimony which is relevant to Defendants' jurisdictional arguments.

Next, Mr. Cruz asserts that the Electric Company "is a public corporation established in accordance with Honduran law . . ." and Honduras "is the owner of the shares . . ." of the company.

3

*Id*. ¶3. According to Mr. Cruz, the Electric Company "has its own legal personality and assets, operating with technical, administrative, and financial independence and autonomy from the Government of Honduras." *Id*. Again, Mr. Cruz provides no foundation for this broad statement which is also relevant to Defendants' jurisdictional arguments.

Additionally, Mr. Cruz contends, without any specific support, that the Electric Company "does not engage in commercial activities in the United States of America," nor has it engaged in any activities in this country "in relation to the dispute that is presented in this action." *Id*. at ¶6. Notably, Mr. Cruz's carefully crafted declaration, however, makes no reference to the Electric Company's affiliates, subsidiaries, partners, or joint venturers, whom may be acting as the company's alter ego and have dealings in the United States.

The Declaration also includes the rather oblique assertion that the Electric Company's "documentation and information" (it is not clear what, if anything, Mr. Cruz personally reviewed), "confirm[] that none of the settlements that were built on the properties adjacent to the project have requested the ENEE to provide electricity, nor have records of any such approvals by the ENEE been found." *Id*. at ¶7. Mr. Cruz adds that a "site visit," the details of which are not provided, "was carried out by the technical team of the ENEE," in the area occupied by the squatters, and

> it has been confirmed that there are clandestine electrical connections, that the ENEE does not have meters installed in the dwellings of these settlements because they are illegal and because they have unapproved electrical installations, and therefore the ENEE does not bill for the energy used by these persons, this resulting in financial losses due to the electrical energy being consumed and not invoiced.

*Id*. at ¶7. As Defendants, if not Mr. Cruz, must surely know, the absence of a "smoking gun" memorandum and the failure to bill and collect the squatters for their electricity does not exonerate

the Electric Company. Indeed, it is notable that Mr. Cruz does not say that the so called "illegal" electrical connections have been dismantled.

Finally, consistent with his prior allegations, Mr. Cruz asserts, but does not explain, that "[i]t would be unduly inconvenient to litigate this dispute in the federal courts of the United States . . . ." *Id*. at ¶9. According to Mr. Cruz, this lawsuit "arises from events in Honduras," involves properties located in that country, where "the majority of the documentation" is located, and the "majority of the witnesses are in Honduras or are plaintiffs that have been in or invested in Honduras." *Id*. This bald assertion, as Defendants must certainly know is insufficient, without more, to support a claim for dismissal for forum non conveniens.

### *Declaration of José Noé Cortés Moncada*

Mr. Cortés purports to be "an attorney in Honduras, and the Executive Secretary" of the Property Institute. [DE-22 at ¶1]. Like his counterpart at the Electric Company, Mr. Cortés offers scant detail regarding his duties and responsibilities as Executive Secretary.

In his Declaration, Mr. Cortés refers extensively to Legislative Decree Number 82-2004 (the "Property Law"). He cites to Article 4 of the Property Law for the proposition that the Property Institute is a "decentralized entity" with "its own legal personality and assets, and it will function with technical, administrative, and financial independence." *Id*. at ¶4. "In other words," Mr. Cortés states, "the functions carried out by the [Property Institute] are independent from an administrative point of view . . . ." *Id*. Mr. Cortés goes on to cite and/or quote from Article 5, which concerns that Property Institute's "powers and duties," *id*. at ¶5; Article 7, which describes the Property Institute's "financial assets," *id*. at ¶7; and Article 24, which focuses on "matters of registries and cadasters," *id*. at ¶8. This would appear to support Defendants' contention that the Property Institute is an autonomous body, with a separate juridical persona. However, this

5

essential aspect of Defendants' jurisdictional arguments is undermined by the actual organization of the Property Institute.

According to Mr. Cortés, the Property Institute is comprised of seven stakeholders, including a Board of Directors, that serves as a "leadership body." *Id*. *Id*. at ¶6.  Mr. Cortés asserts that "the Board of Directors is composed of three individuals appointed by the President of the Republic." *Id*.  The Board, in turn, has the power to, among other things, appoint various stakeholders within the Property Institute, including Mr. Cortés as Executive Secretary, the General Managers, the General Inspectors, and members of the Superintendency of Resources. *Id*. The Honduran President's three, hand-picked board members also have the power to approve the Property Institute's "internal organization," to "issue resolutions to govern the matters within its competence," and approve "the institution's draft budgets." *Id*.

Mr. Cortés further alleges, much like his colleague at the Electric Company, that the Property Institute "does not engage in commercial activities in the United States of America," nor has it "engaged in any activity" in this country in relation to this lawsuit. *Id*. at ¶10.  Critically, no reference is made to the Property Institute's affiliates, subsidiaries, partners, or joint venturers, whom may be acting as the company's alter ego and have dealings in the United States.

According to Mr. Cortés, the Property Institute's "records confirm" that the properties comprising the Honduras Development Project "are being developed, commercialized, and sold in the Honduran Market. *Id*. at ¶11.  No evidence is offered in support of this claim which is clearly intended to establish that no taking in violation of international law has occurred.  The same holds true for Mr. Cortés' allegations that none of the Plaintiffs "are identified" as owners of the Honduras Development Project, *id.* at ¶12, or that the Property Institute does not have a commercial relationship with Plaintiffs' or their development project, *id*. at ¶14.

With respect to the lands occupied by the squatters as set forth in the Complaint, Mr. Cortés alleges that the Property Institute "does not control CONAFEPH, does not have any relationships of subordination, dependency, or coordination with CONAFEPH, nor did it approve the illegal invasion of said properties." *Id*. at ¶15.  Mr. Cortés further alleges that neither the Republic of Honduras, nor the Property Institute has not engaged in an expropriation in this case. *Id*. at ¶18.  It is not clear whether or how Mr. Cortés is authorized to speak for the Republic in this case. *Id*.

Mr. Cortés – like Mr. Cruz at the Electric Company – concludes that Honduras has a higher interest than the United States in resolving this dispute in its courts, *id*. at ¶21; the Honduran courts "are best positioned to resolve this dispute, *id.* at ¶22; the Plaintiffs have not exhausted their "judicial rights, *id*. at ¶23; it would be "unwarranted and inconvenient" to litigate this case here because the properties at issue are in Honduras, the "events" happened in Honduras, "most of the documents" are in Honduras, and the "majority of witnesses" are in Honduras "or are plaintiffs who are in or who have invested in Honduras, *id*. ¶24; it would be too expensive to litigate this case in the United States, *id*. at ¶25; and the Plaintiffs "invoked the protection of Honduran law," when they invested in that country and should have expected to litigate any disputes in Honduras, *id*. at ¶26.

## MEMORANDUM

### A. The FSIA Authorizes Limited Discovery Where the Complaint Makes A *Prima Facie* Showing That Sovereign Immunity Does Not Apply

As Defendants point out in their Motion to Dismiss, Plaintiffs must "overcome the presumption that the foreign state is immune from suit in the United States' courts." [DE-19 at 12 (citation omitted).  To overcome immunity, Plaintiffs must demonstrate that their claims fall within one or more of the exceptions set forth in 28 U.S.C. § 1610(a)(2). *Licea v. Curacao Drydock Co., Inc.*, 870 F. Supp. 2d 1360, 1366 (S.D. Fla. 2012).

Because Plaintiffs carry the burden at this initial stage, "courts have recognized the necessity of limited jurisdictional discovery to establish whether a claim comes within the exception. *Id*. (citing *Arriba Ltd. v. Petroleos Mexicanos*, 962 F. 2d 528, 534 (5th Cir. 1992) (recognizing the role of limited jurisdictional discovery "to verify allegations of specific facts crucial to an immunity determination"); *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332-33 (2d Cir. 1999) (recognizing the need for limited jurisdictional discovery to establish exception to the FSIA)); *see also Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 695 (7th Cir. 2012) (authorizing jurisdictional discovery on whether national railway met nexus requirement in connection with the FSIA's expropriation exception); *Box v. Dallas Mexican Consulate General*, No. 11-10126, 2012 WL 3590695 at *3 (5th Cir. 2012) (when "there is a factual question regarding a foreign sovereign's entitlement to immunity [under the FSIA], and thus a factual question regarding a district court's jurisdiction, the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.") (internal citations omitted)); *UNC Lear Services, Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 213 (5th Cir. 2009) (noting that district court "allowed jurisdictional discovery on the FSIA and forum non conveniens issues); *Intercontinental Industries Corp. v. Wuhan State Owned Industrial Holdings Co., Ltd.*, 619 Fed.Appx. 592, 595 (9th Cir. 2015) ("Plaintiff's claim that Defendants may possess the documents needed to show that the commercial activity exception applies is sufficient to warrant consideration of a narrowly tailored request for jurisdictional discovery").

Thus, there is ample support for the general proposition that discovery, albeit on a limited basis, should be authorized before ruling on a motion to dismiss in FSIA litigation.

### B. Plaintiffs Have Made A *Prima Facie* Showing That Sovereign Immunity Does Not Apply

Before a court grants limited jurisdictional discovery, "a plaintiff must first plead the *prima facie* elements of the exception." *Licea*, 870 F. Supp. 2d at 1366. The district court's decision in *Furry v. Miccosukee Tribe of Indians of Florida*, No. 10-24525-CIV, 2011 WL 1303281 (S.D. Fla. Mar. 31, 2011), illustrates the degree to which the movant must plead a *prima facie* case.

The complaint in *Furry* alleged that the defendants, their agents, employees, officers, and/or representatives, "knowing that the plaintiff's daughter . . . was habitually addicted to alcoholic beverages, furnished her with a substantial amount of alcohol at the Miccosukee Resort & Gaming facility which she consumed on premises." *Furry*, 2011 WL 1303281, at *1 (internal citation omitted). According to the plaintiff, the defendants "failed to prevent [his daughter] from driving away from their gambling and resort facility even though they witnessed her in an obviously intoxicated condition." *Id.* (internal citation omitted). The plaintiff further alleged that shortly after leaving the resort, his daughter "was involved in an automobile collision which resulted in her death." *Id*. (internal citation omitted).

After the defendants moved to dismiss on sovereign immunity grounds, the plaintiff sought limited discovery to determine whether an exception existed to this defense. *Id*. In reviewing the plaintiff's request, the district court acknowledged that "principals of comity underlying the FSIA require the district court, when deciding whether or not to allow jurisdictional discovery from a foreign sovereign, to balance the need for discovery to substantiate exceptions to statutory foreign sovereign immunity against the need to protect[] a sovereign agency's legitimate claim to immunity from discovery." *Id.* at *2 (internal quotation marks and citations omitted) (brackets in original)). The district court further considered the defendants' contention that permitting

9

jurisdictional discovery "would constitute an abuse of discretion because the plaintiff's complaint failed to sufficiently allege any exception to sovereign immunity." *Id*. at *3.

Rejecting the defendants' position, the district court noted that the complaint alleged that the defendants served the plaintiff's daughter a substantial amount of alcohol at their gambling and resort facility and permitted her to leave in an obviously intoxicated condition. *Id*. The complaint further alleged that as a result of her inebriated state, the plaintiff's daughter was involved in an automobile collision on a Florida highway that resulted in her death. *Id*. According to the district court, the plaintiff "alleged facts in his complaint, which if substantiated through discovery, could assist the Court in determining whether an exception to the FSIA applies." *Id*.

In this case, Plaintiffs have alleged sufficient facts to bring this action within the takings exception to the FSIA. Under the FSIA, and as alleged in the complaint, Defendants are not immune from suit where, as here, "rights in property taken in violation of international law are in issue and . . . that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States." *See* [DE-1 at ¶120 (citing 28 U.S.C. § 1605(a)(3))].

The complaint alleges that government-backed squatters surrounded the Honduras Development Project. [DE-19 at ¶¶136-137]. As part of their incursion into these lands, the squatters, numbering in the thousands, built a make-shift city. *Id*. at ¶138. To protect the project, security guards were posted along the project's perimeter. *Id*. at ¶140. The guards were threatened by the squatters and those living in the residential phase were forced to arm themselves. *Id*. At one point, the squatters occupied a main highway blocking access into and out of the Honduras Development Project for several days. *Id*.

As a result of the squatters' actions, residential home sales within the Honduras Development Project plummeted and the project came to a standstill. *Id*. at ¶141. At least forty-two lots within the residential phase were forfeited for non-payment. *Id*. The commercial development phase of the project did not proceed beyond certain initial improvements, including the paving of a 120-foot main entrance, the installation of water and sewer connections and underground electrical and drainage systems, and the construction of a 15-foot water feature and roundabout. *Id*.

Just one year before the squatters effectively shut-down the Honduras Development Project in 2012, Honduras hosted a highly-publicized conference under the banner of *Honduras is Open for Business*. *Id*. at ¶139. The purpose of the meeting was to attract investment to Honduras. *Id*. Representatives of the Honduras Development Project attended the conference and met with government officials to discuss the planned development. *Id*. Honduras' then leader, President Porfirio Lobos Sosa, described the conference as a "fundamental milestone of the *National Program for Investment Promotion*, which we consider one of the most important instruments to meet the objectives of our national plan." *Id*. Protecting investments, especially in real-estate and other hard assets, was clearly a key concern for Honduras. As part of its plan to increase investment, Honduras' Congress approved the *Law for the Promotion and Protection of Investment* that would, among other things, provide equal treatment to the assets of both Honduran nationals and foreign investors like Plaintiffs here. *Id*. The law was also supposed to bar the expropriation of land. *Id*.

Defendants aided and abetted the squatters. They provided vital assistance in the form of electricity for their massive encampment and blocking efforts to remove them from the illegally occupied lands. *Id*. Defendants have also claimed that the Honduras Development Project failed

to submit proper development plans. *Id.* at ¶148. In addition, in 2015, the local government announced its intention to rezone the lands occupied by the Honduras Development Project for low-income housing. *Id*. at ¶149. Zoning, it should be noted, falls squarely within the ambit of the Property Institute's scope of authority. *See* [DE-22 (Cortés Decl. at ¶8)].

Finally, and perhaps most significant of all, Defendant Honduras, through its representative, Luis F. Mata, in his official capacity as Secretary of State for the Promotion of Investments, has admitted to the expropriation. [DE-1 at ¶150-153]. Secretary Mata recognized that the Republic had allowed the squatters to block development of the Honduras Development Project and devalue the land. *Id*. at ¶151.

### C. Plaintiffs Seek Limited Jurisdictional Discovery To Verify Essential Facts Necessary To This Court's Exercise of Jurisdiction Over This Matter

Plaintiffs seek limited jurisdictional discovery to verify those factual allegations that are the linchpins to Defendants' motion to dismiss. More specifically, Plaintiffs seek to take discovery (documentary and testimonial) related to statements of fact made by Juan Jose Cruz, José Noé Cortés Moncada, and Luis F. Mata. The areas for discovery would be limited to:

- the position, role, and job duties of Juan Jose Cruz and José Noé Cortés Moncada, respectively;

- the extent to which the Republic directs, leads, influences, and/or controls the operations of the Electric Company and the Property Institute;

- Honduras' policy towards the squatters and private land-owners whose lands have been overrun or devalued by the illegal encampments;

- the extent to which the Electric Company and the Property Institute, including their affiliates, subsidiaries, partners, or joint venturers, engage in commercial activities within the United States;

12

- the extent to which the Electric Company and the Property Institute have supported the squatters' encampment, either formally or informally;

- the policies and procedures, whether formal or informal, adopted by the Electric Company and the Property Institute in response to the squatters' presence on the occupied lands;

- the "site visit" conducted by the Electric Company to the lands surrounding the Honduras Development Project occupied by the squatters, [DE-21 at ¶7];

- the specific claim that the properties constituting the Honduras Development Project are "being developed, commercialized, and sold in the Honduran Market," [DE-22 at ¶11];

- the specific claim that neither the Republic, nor the Property Institute have engaged in expropriation in this case, [DE-22 at ¶18];

- the specific claim that the Honduras Development Project failed to submit proper development plans, [DE-1 at ¶148];

- efforts to rezone the lands comprising the Honduras Development Project, [DE-1 at ¶149]; and

- why it would be inconvenient and too expensive to litigate this case in the courts of the United States.

These topics and the facts they yield will help verify and or further establish the application of the takings exception to the FSIA, 28 U.S.C. § 1605(a)(3), to this case.

As is clear from the specific areas of inquiry listed above, Plaintiffs have no interest in embarking on a fishing expedition. To the contrary, they have identified twelve discrete areas for documentary and testimonial discovery which are based on the allegations contained in the complaint, the motion to dismiss, and the declarations filed by Defendants in this litigation. *Cf. Butler v. Sukhoi,* 579 F. 3d 1307, 1311 (11th Cir. 2009) (plaintiffs "simply assert that they are

13

entitled to further discovery regarding [the defendants'] alter ego status."); *see also Sequeira v. Republic of Nicaragua*, No. 16-25052-CIV, 2019 WL. 347248, at *2 (S.D. Fla. Jan. 10, 2019) (noting that plaintiff failed to identify what specific facts would be verified through jurisdictional discovery)). Accordingly, this Court should authorize Plaintiffs to conduct limited jurisdictional discovery.

## CONCLUSION

Based on the foregoing points and authorities, Plaintiffs Eileen Agurcia, *et al.* move this Court to grant limited jurisdictional discovery as authorized by the FSIA and warranted by the *prima facie* showing in the Complaint that Defendants are not entitled to sovereign immunity.

Respectfully submitted:

*/s/ Carlos F. Gonzalez*
Carlos F. Gonzalez
Florida Bar No. 494631
Ignacio M. Alvarez
Florida Bar No. 40572
Alvarez, Gonzalez & Menezes, LLP
One Flagler Building
14 N.E. 1st Avenue
Suite 1105
Miami, Florida 33132
Tel. (305) 723-1876
Fax (786) 475-7832
Email: cfg@algofirm.com
Email: imalvarez@algofirm.com

*Counsel for Plaintiffs Eileen Agurcia, et al.*

## LOCAL 3.01(g) CERTIFICATE

Pursant to Rule 3.01(g) of the Local Rules of the Middle District of Florida, the undersigned certifies that prior to filing this motion he conferred with opposing counsel regarding the relief sought herein, but the parties were unable to agree on the resolution of the motion.

*/s/ Carlos F. Gonzalez*
Carlos F. Gonzalez

**CERTIFICATE OF SERVICE**

I certify that on April 17, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

*/s/ Carlos F. Gonzalez*
Carlos F. Gonzalez
