# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

## CASE NO.:  8:19-cv-00038-JSM-SPF

EILEEN AGURCIA, et al.,

      Plaintiffs,

vs.

REPÚBLICA DE HONDURAS,
INSTITUTO DE LA PROPIEDAD,
and EMPRESSA NACIONAL DE
ENERGÍA ELÉCTRICA,

      Defendants.

_____/

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY

Plaintiff Eileen Agurcia, *et al*., pursuant to this Court's Order [DE-38], files this Reply in further support of Plaintiffs' Motion to Conduct Limited Jurisdictional Discovery [DE-31], and in support states:

## PRELIMINARY STATEMENT

Defendants act as if they have already won this litigation.  Rather than arguing that they are "presumptively immune" under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq.*, they boldly proclaim that "[b]ecause Defendants have foreign sovereign immunity, the Court lacks subject matter jurisdiction and the Complaint must be dismissed."  [DE-36 at 5].  Not only does this statement place the proverbial cart before the horse, it highlights why limited jurisdictional discovery is crucial in this case.

Urging dismissal, Defendants rely on the testimony of Juan José Cruz [DE-21], who is employed by Defendant Empresa Nacional de Energía Eléctrica ("the Electric Company"), *id.* at

¶1, and José Noé Cortés Moncada [DE-22], an employee of Defendant Instituto de la Propiedad ("the Property Institute), *id.* at ¶1.  Both witnesses claim that their employers are immune from suit and that Plaintiffs have failed to invoke the expropriation exception to the FSIA.  [DE-31 at 2].  More specifically, the witnesses assert that Plaintiffs have not established that rights in property are at issue here; they assure that there was no taking; that there was no violation of international law; and that Plaintiffs have not satisfied the statutory nexus requirement for the takings exception.  *Id*.  Defendants expect Plaintiffs and this Court to accept these conclusions without question, challenge, or even inquiry.

Defendants also rely on these witnesses to claim that Plaintiffs lack standing; that there is no personal jurisdiction; and that this case should be dismissed for *forum non conveniens*.  *Id*. at 2-3.  Clearly, Defendants consider these witnesses and their allegations of fact to be critical to their defense of this lawsuit.  Nevertheless, they refuse to even concede that limited jurisdictional discovery, narrowly tailored to verify crucial facts necessary to establish the expropriation exception to the FSIA, should be permitted.

At the heart of Defendants' opposition is their mistaken belief that Plaintiffs seek "far ranging general discovery."  [DE-36 at 5].  Yet, their own characterization of Plaintiffs' motion undermines their position. As Defendants note, Plaintiffs' motion seeks discovery from three witnesses regarding twelve specifically enumerated categories of fact.  *Id*.  Defendants try to paint Plaintiffs' discovery requests as "broad."  *Id*.  However, in this, as in many of their other pronouncements, Defendants are simply wrong.  As Plaintiffs demonstrated in their motion, they seek limited and narrowly tailored discovery designed to verify crucial jurisdictional facts as authorized by the FSIA.  [DE-31 at 12-14].

## REPLY

### I.     PLAINTIFFS HAVE CITED THE CORRECT LEGAL STANDARD

Defendants devote a significant portion of their opposition to rehashing general propositions of law [DE-36 at 9-11] which neither Plaintiffs, nor any credible litigant for that matter, could never dispute.  Plaintiffs agree that under the FSIA, a foreign state and its agencies and instrumentalities are presumptively immune from lawsuits in U.S. courts.  [DE-36 at 9-10]. However, as Defendants concede, the presumption of immunity does not block a plaintiff from seeking limited jurisdictional discovery to bring a case within one of the FSIA's exceptions.  *Id*. at 14.  For their part, Plaintiffs acknowledge that in order to obtain the limited jurisdictional discovery they seek here, they must – as they have already done – "identify specific facts that are 'crucial' to the immunity adjudication . . . under the FSIA."  *Id*. at 11.

The parties part ways, however, on the standard this Court should apply in authorizing discovery.  On that score, Defendants' superficial efforts at distinguishing two of Plaintiffs' citations, while ignoring the rest, fails to convince.  Defendants chide Plaintiffs for their citation to *Licea v. Curacao Drydock Co., Inc.*, 870 F. Supp. 2d 1360 (S.D. Fla. 2012), [DE-36 at 11-12], but ignore the half-dozen additional authorities in the motion which also stand for the proposition that discovery is appropriate where the complaint makes a *prima facie* showing that one of the FSIA's exceptions applies, [DE-31 at 8 (collecting cases)]. According to Defendants, Plaintiffs "confuse jurisdictional immunity of section 1605 with execution immunity of section 1610."  [DE-36 at 11-12].  There is no confusion here.

In *Licea*, the district court noted that "[b]efore a court grants limited jurisdictional discovery as to whether the exception applies, a plaintiff must first plead the *prima facie* elements of the exception."  870 F. Supp. 2d 1366.  In their rush to criticize, Defendants miss the fact that

*Licea* took the above-quoted language from the Eleventh Circuit's decision in *Butler v. Sukhoi Co.*, 579 F. 3d 1307, 1313 (11th Cir. 2009). In *Butler*, the plaintiffs initially obtained a multi-million-dollar judgment against Sukhoi Design Bureau ("SDB") for injuries James Butler suffered when a Sukhoi SU-29 aircraft he was piloting crashed as a result of defects. 579 F. 3d at 1310 ("*Butler I*"). Thereafter, the Butlers filed a second action ("*Butler II*") against SDB and several additional defendants, including the Russian Federation. *Id.*

The defendants in *Butler II* moved to dismiss asserting immunity from both liability and execution under the FSIA. *Id.* "Because the Butlers sought to invoke the jurisdiction of the United States courts to enter a new judgment in a separate cause of action against appellants," the Eleventh Circuit explained that "they bore the burden of presenting a *prima facie* case that jurisdiction existed." *Id.* at 1313. Thus, while *Licea* may have addressed what Defendants here refer to as "execution liability," it relied on *Butler II*, which involved "jurisdictional immunity" for purposes of requiring a *prima facie* showing that an exception to the FSIA applies. Put differently, Defendants raise a distinction without an analytical difference.[1]

Defendants give similarly short shrift to Plaintiffs' citation to *Furry v. Miccosukee Tribe of Indians of Florida*, No. 10-24525-CIV, 2011 WL 1303281 (S.D. Fla. Mar. 31, 2011). [DE-36 at 12-13]. According to Defendants, *Furry* is not "helpful" because its analysis applied to tribal sovereign immunity which is not governed by the FSIA. [DE-36 at 12-13]. Again, however, Defendants seize on an analytically insignificant distinction. While the Magistrate Judge may have erred in determining that the FSIA applied to the Miccosukee Tribe of Indians of Florida, *id.*, Defendants do not challenge the court's analysis of the discovery question under the FSIA, nor do

---

[1] Why Defendants chose to argue this false distinction here is not clear. In their Motion to Dismiss, Defendants cite to *Butler* for the proposition that "[t]he burden is on the Plaintiffs to come forward *with evidence* that an FSIA exception to immunity applies, or subject matter jurisdiction is lacking." [DE-19 at 12]. Plaintiffs have done so.

they argue that even if the Magistrate Judge had correctly analyzed the immunity issue, discovery would still not have been appropriate.

In an effort to end the discussion, Defendants claim that "*Furry* is the sole case cited by Plaintiffs in which jurisdictional discovery was allowed."  [DE-36 at 13].  If only that were true. *See* [DE-31 at 8 (citing *Filus v. Lot Polish Airlines*, 907 F. 2d 1328 ("Plaintiff is entitled to have these interrogatories regarding defendants' possible commercial activities in the United States answered, if she can satisfy the first two elements of jurisdiction."); *Abelesz v. Magyar Nemzeti Bank*, 692 F. 3d 661, 695 (7th Cir. 2012) ("We remand the railway case for jurisdictional discovery on whether the national railway meets the nexus requirement."); *Box v. Dallas Mexican Consulate General*, No. 11-10126, 2012 WL 3590695 at *6 (5th Cir. Aug. 21, 2012) (remanding for limited discovery because the district court "abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority."); *UNC Lear Services, Inc. v. Kingdom of Saudi Arabia*, 581 F. 3d 210, 214 (5th Cir. 2009) ("The district court allowed jurisdictional discovery on the FSIA and forum non conveniens . . . ."); *Intercontinental Industries Corp. v. Wuhan State Owned Industrial Holdings Co., Ltd.*, 619 Fed. Appx. 592 (9th Cir. 2015) ("Plaintiff's claim that Defendants may possess the documents needed to show that the commercial activity exception applies is sufficient to warrant consideration of a narrowly tailored request for jurisdictional discovery.")].

Without question, Plaintiffs have applied the correct legal standard and, more importantly, have demonstrated that a *prima facie* case exists to bring this case within the FSIA's expropriation exception.  *See generally,* [DE-31].

## II.     PLAINTIFFS SEEK LIMITED JURIDICTIONAL DISCOVERY TO VERIFY FACTS CRUCIAL TO THIS COURT'S IMMUNITY DETERMINATION

Turning to the specific discovery at issue here, Defendants deflect by attempting to create an artificial distinction between the "general discovery" they claim Plaintiffs seek and the limited and specific discovery authorized by the FSIA.  Defendants seize on Plaintiffs' need to take discovery "to verify those factual allegations that are the linchpins to Defendants' motion to dismiss."  [DE-36 at 14 (*quoting* DE-31 at 12)].  According to Defendants, "this general pronouncement" is "too vague, general and broad to satisfy the requirement that discovery be limited to verifying facts 'crucial' to the immunity determination."  *Id*.  Indeed.  This is why Plaintiffs followed the quoted language with the statement: "More specifically, Plaintiffs seek to take discovery (documentary and testimonial) related to statements of fact made by Juan José Cruz, José Noé Cortés Moncada, and Luis F. Mata."  [DE-31 at 12].  Thereafter, Plaintiffs identify twelve discrete areas of fact into which they seek discovery.  *Id*. at 12-13.  This is not a fishing expedition; it is a precise, narrowly tailored inquiry into the facts Plaintiffs must establish to overcome immunity.

Defendants' own citations offer a stark comparison between the specific factual inquiry Plaintiffs seek to undertake here and the general discovery rejected by the courts.  Defendants' note that discovery against a foreign state should be granted "only to verify allegations of specific facts crucial to an immunity determination." [DE-36 at 14 (*quoting Sequeira v. Republic of Nicar*., No. 16-25052-CIV, 2019 U.S. Dist. LEXIS 32244 at *4 (S.D. Fla. Jan. 10, 2019)].  As examples, Defendants point to instances of courts denying jurisdiction where the plaintiffs failed to identify "specific facts crucial to an immunity determination," [DE-36 at 14 (*quoting Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F. 3d 1081, 1094 (9th Cir. 2018)) or did not "allege specific facts, that if verified through jurisdictional discovery, would have established an exception

6

to immunity," *id*. (*quoting Trigeant Ltd. v. Petroleos de Venezueal S.A.*, No. 08-80584-CIV-Middlebrooks/Johnson, 2010 WL 11505968 at *3).

Plaintiffs have already made a *prima facie* showing that Defendants are not immune from suit where, as here, "rights in property taken in violation of international law are in issue and . . . that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States." [DE-31 at 10 (*quoting* DE-1 at ¶120 (*citing* 28 U.S.C. § 1605(a)(3))]. To that end, Plaintiffs seek discovery to verify such crucial facts as (1) the Republic's role in leading the operations of the Electric Company and Property Institute (relevant to the alter ego analysis under the FSIA); (2) the commercial activities of the Electric Company and Property Institute in the United States (relevant to the application of the expropriation exception to the FSIA); (3) the extent to which the Electric Company and Property Institute have supported the squatters' encampment (relevant to Defendants' defense that no expropriation has occurred; and (4) Defendants' claim that the properties comprising the Honduras Development Project are being developed, commercialized, and sold (also relevant to Defendants' assertion that there has not been a state-sponsored taking). [DE-31 at 12-13]. These and the other narrowly tailored areas identified by Plaintiffs in the present motion are crucial to verifying key facts essential to the establishment of the expropriation exception here.[2]

Tacking, Defendants claim that there is no "valid argument for deposing Mr. Cruz to ask about 'affiliates, subsidiaries, partners, or joint venturers, whom may be acting as the company's alter ego and have dealings in the United States." [DE-36 at 16 (*quoting* DE-31 at 4)]. Defendants

---

[2]     Defendants claim that Plaintiffs "are not disputing jurisdictional facts but arguing the legal adequacy of the facts they have already alleged." [DE-36 at 15]. They argue that "[t]hese are legal, not factual issues for which the present record is sufficient for the Court to rule." *Id*. This argument only makes sense if Plaintiffs accept the unsupported legal conclusions contained in Defendants' Declarations. They do not.

claim that this is "a textbook 'fishing expedition'" whereupon Plaintiffs hope "to stumble upon a fact to create jurisdiction where none current [sic] exists." *Id*.  Defendants' selective quotation takes Plaintiffs' words entirely out of context. The partial quotation Defendants cite to comes from the early portion of Plaintiffs' motion which set forth the sum and substance of Mr. Cruz's Declaration.  [DE-31 at 4].  The complete sentence actually reads:  "Notably, Mr. Cruz's carefully crafted declaration, however, makes no reference to the Electric Company's affiliates, subsidiaries, partners, or joint venturers, whom may be acting as the company's alter ego and have dealings in the United States." *Id*.

Taken in context, it is clear that the point of this sentence was not to justify expansive or general discovery. Rather, Plaintiffs sought to highlight Mr. Cruz's factual omissions.  Defendants should have looked at Plaintiffs' subsequent delineation of the specific discovery they seek.  [DE-31 at 12-14].  One of the twelve specific categories identified by Plaintiffs includes "the extent to which the Electric Company and the Property Institute, including their affiliates, subsidiaries, partners, or joint venturers, engage in ***commercial activities*** within the United States." *Id*. at 12 (emphasis added).  This is indisputably one of the essential elements of the takings clause.  [DE-31 at 10 (internal citation omitted)].

Continuing their efforts to misrepresent Plaintiffs' position, Defendants next argue that "Plaintiffs press the point that Mr. Cruz must explain why "[i]t would be unduly inconvenient to litigate this dispute in the federal court of the United States." [DE-36 at 16 (*quoting* DE-31 at 5)]. This quote, like the previous one, is again taken from Plaintiffs' summary of Mr. Cruz's Declaration.  The complete sentence reads:  "Finally, consistent with his prior allegations, Mr. Cruz asserts, but does not explain, that '[i]t would be unduly inconvenient to litigate this dispute in the federal courts of the United States . . . ." [DE-31 (quoting Cruz Decl. at ¶9)].  Plaintiffs are

not nit-picking.  There is a real difference between a witness that explains the basis for his conclusions and one who simply makes bold pronouncements upon which this Court is encouraged to rely in dismissing the claims of nearly 100 U.S. citizens.  There is also the fact that Defendants should at least try to accurately represent Plaintiffs' position.  Setting that aside, discovery on "why it would be inconvenient and too expensive to litigate this case in the courts of the United States," *id*. at 13, is not unusual.  *See e.g. UNC Lear Services, Inc.,* 581 F. 3d at  214 ("The district court allowed jurisdictional discovery on the FSIA and forum non conveniens . . . .").

The arguments as to why Mr. Cortés should not be subjected to the narrowly tailored discovery requests proposed by Plaintiffs, [DE-31 at 12-13], to quote Defendants, "fare no better," [DE-36 at 12].  These arguments suffer from the same mischaracterization of Plaintiffs' position as those offered with respect to Mr. Cruz.  And, for the same reasons outlined above, this Court should allow discovery into the facts alleged by Mr. Cortés.[3]

Defendants also refer to the "burden" that discovery would impose on Honduras if this motion were granted.  [DE-36 at 10 (internal citations omitted)].  However, beyond the mere claim that discovery is burdensome, Defendants make no effort to explain what difficulties Plaintiffs' limited and narrowly tailored discovery requests would impose.  Certainly, the requests would impose no more of a burden than that already undertaken by Honduras in identifying its witnesses, locating and verifying the information contained in their Declarations, drafting and reviewing the Declarations, and filing those with this Court.

Defendants round out their motion by suggesting – but never explicitly stating – that Plaintiffs' efforts here constitute nothing more than a delay tactic.  [DE-36 at 18].  Defendants forget that Plaintiffs commenced this action on January 7, 2019.  [DE-1].  It was not until nearly

---

[3]        Unlike Messrs. Cruz and Cortés, Defendants offer no argument as to why it would be inappropriate to take discovery from Luis F. Mata.

one year later that Defendants appeared.  [DE-15, 16].  And it was not until February 10, 2020 that Defendants filed their Motion to Dismiss.  [DE-19].  Having had the benefit of time to formulate their legal strategy, Defendants are in no position to criticize Plaintiffs for their own filings.

## CONCLUSION

Based on the foregoing points and authorities, Plaintiffs Eileen Agurcia, *et al*. respectfully that this Court grant their Motion to Conduct Limited Jurisdictional Discovery.

Respectfully submitted:

*/s/ Carlos F. Gonzalez*
Carlos F. Gonzalez
Florida Bar No. 494631
Ignacio M. Alvarez
Florida Bar No. 40572
Alvarez, Gonzalez & Menezes, LLP
One Flagler Building
14 N.E. 1st Avenue
Suite 1105
Miami, Florida 33132
Tel. (305) 723-1876
Fax (786) 475-7832
Email:  cfg@algofirm.com
Email:  imalvarez@algofirm.com

*Counsel for Plaintiffs Eileen Agurcia, et al.*

## CERTIFICATE OF SERVICE

I certify that on May 11, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

*/s/ Carlos F. Gonzalez*
Carlos F. Gonzalez