UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EILEEN AGURCIA, et al.,

    Plaintiffs,

v.                                   Case No. 8:19-cv-38-T-30SPF

REPUBLICA DE HONDURAS, INSTITUTO
DE LA PROPIEDAD, EMPRESA
NACIONAL DE ENERGIA ELECTRICA,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon the Plaintiffs' Motion to Conduct Limited Jurisdictional Discovery (Doc. 31). Defendants filed a Memorandum of Law in Opposition (Doc. 36), and Plaintiffs, with leave of Court, filed a Reply (Doc. 41).

**BACKGROUND**

Plaintiffs, comprised of nearly one hundred United States citizens, filed this action against the Republica de Honduras ("Honduras" or "the Republic") and two Defendants alleged to be the alter egos of the Republic, Institututo de la Propiedad ("the Property Institute") and Empresa Nacional de Energía Eléctrica ("the Electric Company"). Plaintiffs allege that jurisdiction is conferred in this Court pursuant to the Foreign Sovereign Immunities Act ("FSIA), 28 U.S.C. § 1602, *et seq*.; more specifically, the expropriation or

takings clause of the FSIA, 28 U.S.C. § 1605(a)(3).[1] The claims against Defendants include a taking in violation of international law claim for the "near-total devaluation" or taking of more than eighty acres of lands without just compensation, *see* Doc. 1 at ¶¶ 1, 154-65, and claims for conversion and civil conspiracy based on the same underlying facts, *see* Doc. 1 at ¶¶ 166-77 and 178-81, respectively.

Plaintiffs invested, via different vehicles, in a real estate development in Honduras—the Honduras Development Project ("HDP").[2] (*See id.* at ¶ 2). Plaintiffs allege that, beginning in 2012, a group, known as the Confederación Nacional de Federaciones de Patronatos de Honduras ("CONAFEPH") and acting as an umbrella organization for various purported social and political movements, caused thousands of squatters to occupy large tracts of privately-owned lands surrounding the HDP. (*Id.* at ¶ 4). Plaintiffs assert that it was with the knowledge and support of Defendants that CONAFEPH and the squatters took over the surrounding land, filed frivolous petitions for its expropriation, and ignored several orders of ejectment issued by the Honduran courts. (*Id.* at ¶ 5). It is alleged that the Electric Company is the national power company of Honduras and supplied electricity to the squatters despite the knowledge that the squatters were illegally occupying private lands. (*Id.* at ¶ 7). Moreover, the Property Institute also allegedly aided the squatters by accepting their frivolous petitions for expropriation without conducting the necessary due diligence before admitting such filings and later ignoring requests by the true landowners, including some associated

---

[1] "The FSIA is a jurisdictional statute; it 'does not create or modify any causes of action.'" *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1319 (11th Cir. 2018) (quoting *Republic of Austria v. Altmann*, 541 U.S. 677, 695 n.15 (2004)).
[2] Plaintiffs' complaint is lengthy, and the facts alleged therein are numerous. (*See* Doc. 1). The Court includes this truncated version of the alleged facts strictly to facilitate analysis of the motion under consideration.

with the HDP, to intervene. (*Id.*). Plaintiffs allege that, as a result of the squatters' occupation of the land surrounding the HDP, crime and violence increased, home sales plummeted, and the project came to a standstill and its assets "significantly, if not entirely, devalued." (*Id.* at ¶¶ 141, 162).

Defendants have filed a Motion to Dismiss the Complaint (Doc. 19) contending, among other things, Plaintiffs have failed to invoke the expropriation or takings exception to the FSIA, and dismissal is required due to a lack of subject matter and personal jurisdiction and the *forum non conveniens* doctrine. In support of their motion, Defendants submitted the Declarations of Juan Jose Cruz, an employee of the Electric Company (Doc. 21) and José Noé Cortés Moncada, an employee of the Property Institute (Doc. 22). Defendants cite to these declarations for the proposition that both the Electric Company and the Property Institute are immune from suit under the FSIA. (*See* Doc. 19 at 12 (citing Cortés Decl. at ¶¶ 2-8; Cruz Decl. at ¶ 3)). Moreover, Defendants offer the testimony of Cruz and Cortés to support the claim that the Court lacks personal jurisdiction over the Electric Company and the Property Institute. (*See* Doc. 19 at 24 (citing Cortés Decl. at ¶¶ 2-9; Cruz Decl. at ¶¶ 2-6); *id.* at 25 (citing Cortés Decl. at ¶¶ 2-8; Cruz Decl. at ¶¶ 2-4, 7-8); *id.* at 26 (citing Cortés Decl. at ¶¶ 9-10; Cruz Decl. at ¶ 5)). Defendants also cite to the declarations in support of their claim that this action should be dismissed on the basis of *forum non conveniens*. (*See* Doc. 19 at 27 (citing Cortés Decl. at ¶¶ 22-23, 24-26; Cruz Decl. at ¶ 9); *id.* at 28 (citing Cortés Decl. at ¶ 21)).

Plaintiffs argue that the specific allegations of fact contained in the declarations and offered as dispositive evidence that Defendants are immune from suit should be subject to discovery. Specifically, Plaintiffs seek to conduct limited written discovery and to depose

Cruz and Cortés as well as take discovery from Luis F. Mata, a representative of the Republic whom Plaintiffs contend has admitted to the expropriation alleged in this action. (*See* Doc. 31 at 2 (citing Doc. 1 at ¶¶ 150-53)).

## ANALYSIS

Pursuant to the FSIA, a foreign state is immune from federal and state court jurisdiction, except as provided by international agreements, *see* 28 U.S.C. §§ 1330(a), 1604, by specifically enumerated exceptions, *see* 28 U.S.C. § 1605(a)(1)-(6), (b), (d), or by certain other exceptions relating to counterclaims in actions brought by the foreign state itself, *see* 28 U.S.C. § 1607. Without an applicable exception, a foreign sovereign's immunity under the FSIA is complete, and state or federal courts lack subject matter jurisdiction over a plaintiff's case. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (holding "the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country"); *see also Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1543 (11th Cir. 1993) (noting that FSIA is "[t]he only possible source of federal jurisdiction in suits against corporations owned by foreign states"). However, the district court has jurisdiction when an exception applies. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009) (citation omitted).

As such, there is a presumption that a foreign state is immune from suit, and a plaintiff must overcome the presumption "by producing evidence that 'the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions.'" *Africa Growth Corp. v. Republic of Angola*, No. 19-21995-Civ, 2019 WL 6273387, at *2 (S.D. Fla. Nov. 25, 2019) (quoting *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000)). Once a plaintiff demonstrates that one of the statutory exceptions to FSIA immunity applies, the burden then shifts to the defendant to prove, by a preponderance of the evidence,

that the plaintiff's claims do not fall within that exception. *See S & Davis Int'l*, 218 F.3d at 1300; *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1378 (5th Cir. Unit B 1980).[3]

Here, Plaintiffs assert that, under the FSIA, the Court has subject matter jurisdiction under the expropriation exception. 28 U.S.C. § 1605(a)(3). The expropriation exception provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case -- … (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States.

*Id*. Under this exception, "expropriation is a uniquely sovereign act, as opposed to a private act." *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1228 (11th Cir. 2018). To fall within coverage of this exception, Plaintiffs must show "(1) that rights in property are at issue; (2) that property was taken; (3) that the taking was in violation of international law; and (4) that at least one of the two statutory nexus requirements are satisfied." *Comparelli*, 891 F.3d at 1319 (citing 28 U.S.C. § 1605(a)(3); *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000)). If the property in question or any property exchanged for such property is either (a) "present in the United States in connection with a commercial activity carried on in the United States by the foreign state;" or (b) "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States," then the nexus

---

[3] The case law of the Fifth Circuit prior to September 30, 1981 has been adopted as precedent in this judicial circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

requirement is satisfied. *Id.* (quoting 28 U.S.C. § 1605(a)(3); citing *Garb v. Republic of Poland*, 440 F.3d 579, 588 (2d Cir. 2006)). Plaintiffs allege that rights in property are at issue, their property was taken in violation of international law, and Defendants are engaged in commercial activity in the United States.

Limited jurisdictional discovery may be warranted to allow a plaintiff to establish whether a claim falls within an FSIA exception. *See Filus v. Lot Polish Airlines,* 907 F.2d 1328, 1333 (2d Cir. 1990) (finding plaintiff entitled to have interrogatories regarding defendants' possible commercial activities in the United States answered as long as other elements of FSIA jurisdiction are satisfied); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 695 (7th Cir. 2012) (remanding the case for jurisdictional discovery on whether the defendant met the nexus requirement); *Box v. Dallas Mexican Consulate Gen.*, No. 11-10126, 2012 WL 3590695, at *6 (5th Cir. Aug. 21, 2012) (remanding for limited discovery because the district court "abused its discretion in not allowing limited discovery on the issue of whether the Consulate's officials lacked actual authority"); *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 214 (5th Cir. 2009) (noting that "[t]he district court allowed jurisdictional discovery on the FSIA and forum non conveniens issues"); *Intercontinental Indus. Corp. v. Wuhan State Owned Indus. Holdings Co., Ltd.,* 619 F. App'x 592, 595 (9th Cir. 2015) ("Plaintiff's claim that Defendants may possess the documents needed to show that the commercial activity exception applies is sufficient to warrant consideration of a narrowly tailored request for jurisdictional discovery."); *cf. Butler*, 579 F.3d at 1314 (finding that the district court had abused its discretion in allowing jurisdictional discovery where complaint failed to specifically invoke any of the FSIA statutory exceptions); *Sequeira v. Republic of Nicaragua*, No. 16-25052-CIV, 2019 WL 347248, at *2 (S.D. Fla. Jan. 10, 2019) (jurisdictional discovery denied noting

that plaintiff failed to identify what specific facts would be verified through jurisdictional discovery); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("The denial of [plaintiff's] request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion.").

Here, Defendants argue that Plaintiffs have failed to identify what "crucial" facts they could establish by discovery that would defeat Defendants' motion to dismiss on FSIA grounds. However, Plaintiffs specify the 12 topics to which discovery would be limited (Doc. 31 at 12-13) and which Plaintiffs argue would help verify and/or further establish the application of the expropriation exception to this case. The topics include: (1) the position, role, and job duties of Cruz and Cortés, respectively; (2) the extent to which the Republic directs, leads, influences, and/or controls the operations of the Electric Company and the Property Institute; (3) Honduras' policy towards the squatters and private landowners whose lands have been overrun or devalued by the illegal encampments; (4) the extent to which the Electric Company and the Property Institute, including their affiliates, subsidiaries, partners, or joint venturers, engage in commercial activities within the United States; (5) the extent to which the Electric Company and the Property Institute have supported the squatters' encampment, either formally or informally; (6) the policies and procedures, whether formal or informal, adopted by the Electric Company and the Property Institute in response to the squatters' presence on the occupied lands; (7) the "site visit" conducted by the Electric Company to the lands surrounding the HDP occupied by the squatters (citing Doc. 21 at ¶ 7); (8) the specific claim that the properties constituting the HDP are "being developed, commercialized, and sold in the Honduran Market" (citing Doc. 22 at ¶ 11); (9) the specific claim that neither the Republic, nor the Property Institute have engaged in expropriation in

7

this case (citing Doc. 22 at ¶ 18); (10) the specific claim that the HDP failed to submit proper development plans (citing Doc. 1 at ¶ 148); (11) efforts to rezone the lands comprising the HDP (citing Doc. 1 at ¶ 149); and (12) why it would be inconvenient and too expensive to litigate this case in the courts of the United States. (Doc. 31 at 12-13).

      The Court is mindful of the "delicate balance between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or a sovereign agency's legitimate claim to immunity from discovery." *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094 (9th Cir. 2018) (citations omitted). Moreover, the Court recognizes that, as such, jurisdictional discovery in FSIA cases "should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Id.* (citations omitted); *see also Trigeant Ltd. v. Petroleos de Venezuela S.A.*, No. 08-80584-CIV, 2010 WL 11505968, at *3 (S.D. Fla. Jan. 5, 2010). The Court also considers the fact that "challenges to jurisdiction under the expropriation exception, like other factual challenges to subject-matter jurisdiction under Rule 12(b)(1), may be resolved by looking to 'material extrinsic from the pleadings, such as affidavits or testimony.'" *Comparelli*, 891 F.3d at 1319-20 (quoting *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008)) (remanding to allow amendment of the complaint and suggesting that jurisdictional discovery may be required in order for district court to determine whether jurisdiction exists under the FSIA's expropriation exception). Plaintiffs' requested discovery seeks to exact evidence that the conduct which forms the basis of allegations falls within the expropriation exception. *See Africa Growth Corp.*, 2019 WL 6273387, at *2. For example, the extent to which the Republic controls the operations of the Electric Company and the Property Institute would be determinative of whether they are "foreign states" or agencies or

instrumentalities of a "foreign state" under 28 U.S.C. § 1605(a)(3). Similarly, most of the topics are directly related to the allegations of expropriation of the property itself, *i.e.*, the taking of the property, such as Honduras' policy towards the squatters and private landowners whose lands have been overrun or devalued by the illegal encampments, the extent to which the Electric Company and the Property Institute have supported the squatters' encampment, either formally or informally, and the policies and procedures, whether formal or informal, adopted by the Electric Company and the Property Institute in response to the squatters' presence on the occupied lands. The extent to which the Electric Company and the Property Institute, including their affiliates, subsidiaries, partners, or joint venturers, engage in commercial activities within the United States is determinative of this Court's jurisdiction as well. As such, the Court finds the requested discovery to be limited to facts essential to an immunity determination.

Accordingly, it is hereby

**ORDERED**:

Plaintiffs' Motion to Conduct Limited Jurisdictional Discovery (Doc. 31) is **GRANTED** with the areas of discovery limited to those delineated in Plaintiffs' motion. (*See* Doc. 31 at 12-13). The parties are directed to file a joint discovery plan on or before **June 8, 2020**, for conducting the limited jurisdictional discovery.

**ORDERED** in Tampa, Florida, this 22nd day of May 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

9