UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EILEEN AGURCIA, et al.,

    Plaintiffs,

v.                                                  Case No. 8:19-cv-38-TPB-SPF

REPUBLICA DE HONDURAS, INSTITUTO
DE LA PROPIEDAD, and EMPRESA
NACIONAL DE ENERGIA ELECTRICA,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on "Defendants' Motion to Dismiss the Complaint and Memorandum of Law in Support Thereof," filed February 10, 2020. (Doc. 19). Plaintiffs filed a response in opposition on January 25, 2021. (Doc. 69). Defendants filed a reply on February 22, 2021. (Doc.72). After reviewing the motion, response, court file, and record, the Court finds as follows:

### Background

Plaintiffs, nearly one hundred United States citizens, filed this action against Republica de Honduras ("Honduras") and two of its subdivisions or agencies – the national power company Empresa Nacional de Energia Electrica ("National Electric Energy Company") and the state property institute Instituto de la Propiedad ("Property Institute"). Plaintiffs invested in a real estate development project (the "Honduras Development Project" or the "project") in San Pedro Sula, Honduras. The project was

planned to include approximately 420 middle-income homes, along with offices and retail space, on nearly eighty acres of land, and it was financed by approximately $4,000,000 in direct investment, including both equity and debt.

In 2012, a non-governmental populist political group led thousands of squatters to occupy the land surrounding the project. The group, known as the Confederación Nacional de Federaciones y Patronatos de Honduras ("CONAFEPH"), is an umbrella organization for various social and political movements. The squatters established a make-shift city on the surrounding lands, building homes and roads. Plaintiffs allege that the squatters filed frivolous petitions with the Property Institute seeking to obtain title to the occupied land. Although the Property Institute denied the petitions, Plaintiffs allege that the Property Institute assisted the squatters by not denying them more promptly. Plaintiffs allege that the National Electric Energy Company assisted the squatters by permitting them to connect and take electricity from the power plant. Plaintiffs also allege that the National Electric Energy Company assisted the squatters by permitting them to connect and take electricity from the power plant. Plaintiffs claim that, as a result of the squatters' occupation of the land surrounding the Honduras Development Project, crime and violence has increased, home sales have plummeted, and the project came to a standstill, with its assets "significantly, if not entirely, devalued."

On January 7, 2019, Plaintiffs filed a three-count complaint, arguing: (1) taking in violation of international law (count I), (2) conversion (count II), and (3) civil conspiracy (count III). Plaintiffs allege that jurisdiction is conferred by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et. seq.*

## Legal Standard

"Questions of subject matter jurisdiction may be raised at any time." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016). Under Rule 12(b)(1), the party invoking federal jurisdiction bears the burden of establishing the district court's subject matter jurisdiction. *See, e.g.*, *Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010). A party may attack subject matter jurisdiction through a facial attack or a factual attack. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks . . . 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529). Alternatively, "[f]actual attacks challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside of the pleadings, such as testimony and affidavits, are considered.'" *Id.* (quoting *Lawrence*, 919 F.2d at 1529). In this case, Defendants have presented a factual attack on the Court's subject matter jurisdiction.

"The FSIA is 'the sole basis for obtaining jurisdiction over a foreign state in our courts.'" *Comparelli v. Republica Bolivariana de Venezuela*, 891 F.3d 1311, 1319 (11th Cir. 2018) (quoting *Mezerhane v. Republica Bolivariana de Venezuela,* 785 F.3d 545, 548 (11th Cir. 2015)). "Under the FSIA, 'a foreign state is immune from the jurisdiction of the United States unless an FSIA statutory exemption is applicable.'" *Id.* (quoting *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1296 (11th Cir. 2005)). The district court lacks subject matter jurisdiction if no applicable exception exists. *Id.* (citing *Verlinden*

*B.V. v. Cen. Bank of Nigeria*, 461 U.S. 480, 489 (1983)). Because the basic objective of foreign sovereign immunity is "to free a foreign sovereign from suit," courts consider and resolve these issues at the earliest stage of the proceedings reasonably possible. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316-17 (2017).

A plaintiff bears the burden of overcoming this presumption by producing evidence that the defendant's conduct falls within one of these exceptions. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009). If the plaintiff overcomes this presumption, the burden shifts to the defendant to prove – by a preponderance – that the plaintiff's claims do not fall within that exception. *See id.* at 1313.

## Analysis

In the motion, Defendants argue, among other things, that the Court lacks subject matter jurisdiction under the FSIA. Plaintiffs contend that jurisdiction exists under the FSIA's takings exception.[1] For this exception to apply, Plaintiffs must demonstrate that rights in property are at issue, property was taken in violation of international law, and at least one of the two statutory commercial nexus requirements is satisfied. *Comparelli*, 891 F.3d at 1319 (citing 28 U.S.C. § 1605(a)(3)).

### *Property at Issue*

First, Defendants argue property rights are not at issue because Plaintiffs are not listed as the record owners of the land that is the subject of the Honduras Development

---

[1] The parties agree that all Defendants are subject to the FSIA.

Project. However, Plaintiffs instead identify the property at issue here as their ownership interests in the investment vehicles used for the project.

It is undisputed that Plaintiffs made multiple equity and debt investments in the project through various investment vehicles. Investments in equity and debt – often referred to as intangible property – are capable of being expropriated under the FSIA. *See Nemarian v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470, 478 (D.C. Cir. 2007) (section 1605(a)(3) applies to both tangible and intangible property); *World Holdings, LLC v. Fed. Republic of Germany*, No. 08-20198-CIV-ALTONAGA, 2009 WL 10664174, at *4 (S.D. Fla. May 22, 2009) (finding there is little "distinction between tangible and intangible property for purposes of determining venue or jurisdiction."). Moreover, uncertainty as to who specifically owns the property at issue does not defeat jurisdiction. *See Helmerich*, 137 S. Ct. at 1316 ("[A] court normally need not resolve, as a jurisdictional matter, disputes about whether a party actually held rights in that property; those questions remain for the merits phase of the litigation."). As such, the Court finds that Plaintiffs have sufficiently alleged and established the existence of property in issue.

### *Property Taken*

Defendants next argue that property has not been taken because the squatters did not occupy land involved in the Honduras Development Project, but only occupied *adjacent* land. In contrast, Plaintiffs argue that the occupation of the land itself is not the issue, and that Defendants took their intangible property by assisting the squatters and causing their investments in the project to devalue.

Here, even if the property at issue is Plaintiffs' investment, Plaintiffs have failed to show that a taking violating international law occurred. Courts have interpreted the phrase "taken in violation of international law" to mean "the nationalization or expropriation of property without payment of the prompt adequate and effective compensation." *See Chettri*, 834 F.3d at 58. In other words, a "taking" refers to action by a government to acquire property for itself, as in the exercise of eminent domain. *See Black's Law Dictionary* 702, 1186 (10th ed. 2009) (definitions of "expropriation," "nationalize"). Plaintiffs have presented no evidence indicating their rights in their investments have been nationalized and have cited no legal authority showing Defendants' actions (or inactions) here constitute expropriation of their investment. *See SI Group Consort Ltd. v. Ukraine, Ivano-Frankivsk State Admin.*, No. 15 CV 3047-LTS, 2017 WL 398400, at *4 (S.D.N.Y. Jan. 30, 2017) (holding Ukraine's failure to pay plaintiff money owed under a foreign judgment did not constitute a "taking" under 28 U.S.C. § 1605(a)(3) because plaintiff continued to hold rights in the judgment). Consequently, Plaintiffs have failed to meet their burden to show a taking occurred.

### *Commercial Nexus*

Finally, Defendants argue there is no commercial nexus sufficient to establish jurisdiction. The takings exception mandates at least one of two commercial nexus requirements be satisfied. *See* 28 U.S.C. § 1605(a)(3); *Comparelli* 891 F.3d at 1326. Specifically, the property taken must either be: (1) "present in the United States in connection with a commercial activity carried on in the United States by a foreign state," or (2) "owned or operated by an agency or instrumentality of the foreign state and that

agency or instrumentality is engaged in commercial activity in the United States." *Id*. Commercial activity can be "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Commercial activity is considered to be in the United States if it has "substantial contact with the United States." 28 U.S.C. § 1603(e).

The Court finds Plaintiffs have failed to present evidence showing the requisite commercial nexus. Plaintiffs point to only one commercial activity – a 2011 conference titled "Honduras is Open for Business," which Defendants hosted in Honduras to encourage foreign investment in the country. This activity is almost certainly not commercial, given that courts have held that the promotion of trade is not commercial activity but a "basic – even quintessential – governmental function." *See Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004). Moreover, the activity certainly did not occur in the United States. Plaintiffs rely on *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 709 (9th Cir. 1992), to argue that the conference satisfies the commercial nexus requirement. *Siderman* is, however, distinguishable because there the court found Argentina engaged in commercial activity by advertising and soliciting customers in the United States. Here, Plaintiffs have presented no evidence showing Defendants took steps *within* the United States to target investors. Accordingly, Plaintiffs have failed to show a sufficient commercial nexus for the takings exception to apply.

## Conclusion

Plaintiffs have failed to establish subject matter jurisdiction under the FSIA. Although it does not appear that Plaintiffs will be able to meet their burden based on the

facts alleged and evidence presented thus far, in an abundance of caution, the Court will dismiss the complaint with leave to amend.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendants' Motion to Dismiss the Complaint and Memorandum of Law in Support Thereof" (Doc. 19) is hereby **GRANTED**.

(2) Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE**, with leave to amend. Plaintiffs are directed to file an amended complaint that corrects the deficiencies identified in this Order on or before July 1, 2021. Failure to file an amended complaint as directed will result in this Order becoming a final judgment. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of June, 2021.

 

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**